DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**WILL TWIGG,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D17-1694

[August 24, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Glenn D. Kelley, Judge; L.T. Case No. 50-2014-CF-010319-AXXX-MB.

David F. Pleasanton of David F. Pleasanton, P.A., West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Matthew Steven Ocksrider, Assistant Attorney General, West Palm Beach, for appellee.

### *ON MOTION FOR REHEARING*

DAMOORGIAN, J.

We grant the State's motion for rehearing in part to correct a scrivener's error, withdraw our opinion dated August 1, 2018, and substitute the following.

Appellant, Will Twigg, appeals his conviction and sentence for one count of battery on an emergency medical care provider and one count of battery following an altercation between Appellant and staff members at a Veteran's Administration hospital ("VA"). On appeal, Appellant argues that: 1) the State failed to prove that he committed the offense of battery on an emergency medical care provider; and 2) Appellant's trial counsel was ineffective on the face of the record for failing to request a self-defense jury instruction and failing to move for a judgment of acquittal on the battery on an emergency medical care provider charge. We agree with Appellant's arguments pertaining to the battery on an emergency medical care provider count and reverse that conviction. We affirm otherwise.

**Background**

Appellant was involuntarily brought to the emergency department of the VA pursuant to Florida's Baker Act[1] after his employer reported that Appellant was exhibiting erratic behavior. Appellant was subsequently admitted to the VA's inpatient psychiatric unit where, after learning that he was not being released, Appellant became combative and spit on a nurse and a VA law enforcement officer. Based on the foregoing, the State charged Appellant with one count of battery on an emergency medical care provider for spitting on the nurse, one count of battery for spitting on the VA officer, and one count of resisting an officer without violence. Appellant pled not guilty and filed a notice of intent to rely upon insanity as a defense.

The matter proceeded to a jury trial where the State presented evidence that the nurse victim was a Licensed Practical Nurse ("LPN") who, on the day in question, was working in the VA's inpatient psychiatric unit. The State's evidence also established that the psychiatric unit was a secure lockdown unit which was separate and distinct from the VA's other departments, including the emergency department. At the conclusion of the State's case, Appellant's counsel declined to move for a judgment of acquittal ("JOA") on any of the charges. Instead, counsel focused on an insanity defense, presenting evidence from a psychiatrist who opined that Appellant was not able to determine whether what he did was right or wrong when he spit on the nurse and VA officer.

Considering the evidence, the jury rejected Appellant's insanity affirmative defense and found him guilty of battery on an emergency medical care provider, guilty of battery, and not-guilty of resisting an officer without violence. The court adjudicated Appellant per the jury's verdict and sentenced Appellant to time served followed by eighteen months of probation.

**Analysis**

> a) *Sufficiency of the Evidence Proving Battery on an Emergency Medical Care Provider*

Appellant contends that the State's evidence regarding the nurse victim was insufficient to support a conviction for battery on an emergency medical care provider. Appellant is correct.

---

[1] §§ 394.451–.47892, Fla. Stat. (2015).

Section 784.03 of the Florida Statutes provides that the offense of battery is a first degree misdemeanor and "occurs when a person: 1. [a]ctually and intentionally touches or strikes another person against the will of the other; or 2. [i]ntentionally causes bodily harm to another person." § 784.03(1)(a)−(b), Fla. Stat. (2015). When a battery is committed on certain persons, including "an emergency medical care provider . . . while the . . . emergency medical care provider . . . is engaged in the lawful performance of his or her duties," section 784.07 of the Florida Statutes reclassifies the offense "of battery, from a misdemeanor of the first degree to a felony of the third degree." § 784.07(2), (2)(b), Fla. Stat. (2015).

Based on the foregoing, the elements of the offense of battery on an emergency medical care provider are: (1) the defendant intentionally touched or struck the victim or intentionally caused bodily harm to the victim; (2) the victim was an emergency medical care provider; (3) the defendant knew that the victim was an emergency medical care provider; and (4) the emergency medical care provider was engaged in the lawful performance of his or her duties when the battery was committed. Fla. Std. Jury Instr. (Crim.) 8.11; *State v. Granner*, 661 So. 2d 89, 90 (Fla. 5th DCA 1995). Therefore, in order to prove that Appellant committed the offense of battery on an emergency medical care provider with respect to the alleged nurse victim, the State was required to prove that the nurse was indeed "an emergency medical care provider."

The term "emergency medical care provider" is defined as:

> 1) [A]n ambulance driver, emergency medical technician, paramedic, registered nurse, physician as defined in s. 401.23, medical director as defined in s. 401.23, or any person authorized by an emergency medical service licensed under chapter 401 who is engaged in the performance of his or her duties.

> 2) The term "emergency medical care provider" also includes physicians, employees, agents, or volunteers of hospitals as defined in chapter 395, who are employed, under contract, or otherwise authorized by a hospital to perform duties directly associated with the care and treatment rendered by the hospital's emergency department or the security thereof.

§ 784.07(1)(a), Fla. Stat. (2015) (spacing and numbering added).

3

In *Spurgeon v. State,* 114 So. 3d 1042, 1045 (Fla. 5th DCA 2013), the Fifth District clarified that because section 784.07 is penal in nature, the definition of "emergency medical care provider" must be strictly construed in conjunction with its plain language. Accordingly, in order to meet the first classification of persons outlined in the definition of "emergency medical care provider," the State needed to establish that the nurse victim was a "registered nurse . . . or any person authorized by an emergency medical service license under chapter 401 who is engaged in the performance of his or her duties." § 784.07(1)(a), Fla. Stat. (2015).

The definition section of chapter 401 defines a "registered nurse" as "a practitioner who is licensed to practice **professional** nursing pursuant to part I of chapter 464." § 401.23(20), Fla. Stat. (2015) (emphasis added). Chapter 464 governs the regulation of nursing in Florida. Part I of Chapter 464 provides that an LPN is any "person licensed in this state or holding an active multistate license under s. 464.0095 to practice **practical** nursing." § 464.003(16), Fla. Stat. (2015) (emphasis added). It further delineates that "the practice of **practical** nursing" is distinct from "the practice of **professional** nursing" and that only a "registered nurse" is licensed "to practice professional nursing." § 464.003(19)–(20), (22), Fla. Stat. (2015) (emphasis added). As an LPN is only licensed to practice practical, not professional, nursing, an LPN does not meet the definition of a "registered nurse" under either chapter 401 or 464. Therefore, as an LPN, the nurse victim did not qualify as a "registered nurse" as used in the definition of "emergency medical care provider."

Likewise, the evidence also did not establish that the nurse victim was "any person authorized by an emergency medical service license under chapter 401." Chapter 401 provides for the licensure of emergency medical transportation services such as ambulances and air ambulances. §§ 401.25, .251, Fla. Stat. (2015). The nurse victim was working for a hospital, not a medical transportation service. Accordingly, based on both her license classification and who she worked for, the State did not prove that the nurse victim fell under the first class of persons defined as an "emergency medical care provider."

To fall under the second classification of persons outlined in the definition of "emergency medical care provider," the State was required to prove that the nurse victim was an "employee[], agent[], or volunteer[] of [a] hospital[] as defined in chapter 395, who [was] employed, under contract, or otherwise authorized by [the] hospital to perform duties directly associated with the care and treatment rendered by the hospital's **emergency department** or the security thereof." § 784.07(1)(a), Fla. Stat. (2015) (emphasis added). The evidence adduced at trial established that

4

when she was spit upon, the nurse victim was performing LPN services in the VA's inpatient psychiatric unit. The evidence also established that the VA's inpatient psychiatric unit was separate and distinct from its emergency department. Accordingly, the evidence submitted at trial did not establish that the nurse victim's duties were "directly associated with the care and treatment rendered by the hospital's emergency department." *Id.* Thus, the State also did not prove that the nurse victim qualified as an "emergency medical care provider" under either classification.

Despite the State's failure to prove that the nurse victim qualified as an "emergency medical care provider," Appellant failed to move for a JOA based on the insufficiency of the evidence and, therefore, failed to preserve the issue for anything other than a fundamental error review. *F.B. v. State*, 852 So. 2d 226, 229 (Fla. 2003).

> [I]n order to be of such fundamental nature as to justify a reversal in the absence of timely objection the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.

*Id.* (quoting *Brown v. State*, 124 So. 2d 481, 484 (Fla. 1960)). Based on this narrow application, the Florida Supreme Court has clearly delineated that unpreserved challenges to the sufficiency of the evidence may only be reviewed for fundamental error in two circumstances: "(1) the mandatory review by [the supreme court] of the evidence by which a capital defendant was convicted and sentenced to death; and (2) when there is insufficient evidence that a defendant committed *any* crime." *Monroe v. State*, 191 So. 3d 395, 401 (Fla. 2016). Accordingly, the insufficiency of the evidence to prove an element of a crime does not warrant fundamental error review. *Bagnara v. State*, 189 So. 3d 167, 171 (Fla. 4th DCA 2016) (state's failure to prove value element of grand theft was not fundamental error). Therefore, Appellant's insufficiency of the evidence argument is not cognizable on appeal. The issue is, however, cognizable as an ineffective assistance of counsel claim.

### b) Ineffective Assistance of Counsel on the Face of the Record

"[I]neffective assistance of counsel claims should rarely be raised on direct appeal because they are generally fact-specific." *Michel v. State*, 989 So. 2d 679, 681 (Fla. 4th DCA 2008). As a result, "[a]ppellate courts do not ordinarily address ineffective assistance of counsel concerns until a defendant seeks postconviction relief because such courts are limited to reviewing the record directly before them." *Monroe*, 191 So. 3d at 403.

"On rare occasions, the appellate courts make an exception to this rule when the ineffectiveness is obvious on the face of the appellate record, the prejudice caused by the conduct is indisputable, and a tactical explanation for the conduct is inconceivable." *Bagnara*, 189 So. 3d at 171 (quoting *Corzo v. State*, 806 So. 2d 642, 645 (Fla. 2d DCA 2002)).

    i)    <u>Failure to Move for a JOA on the Battery on an Emergency Medical Care Provider Count</u>

> [F]ailure to move for a judgment of acquittal when the State has not proved an essential element of its case, when it is clear that the State could not reopen its case to prove that essential element, amounts to ineffective assistance of counsel that may sometimes be adequately assessed from the record on direct appeal.

*Corzo*, 806 So. 2d at 645.

As discussed above, the State did not prove, and from our review of the record could not prove, that the nurse victim qualified as an "emergency medical care provider," an essential element of the offense of battery on an emergency care provider. Therefore, had counsel made a proper motion, Appellant would have been entitled to a JOA on the battery on an emergency medical care provider count and a reduction of the charge to the lesser included offense of battery. The distinction between the two offenses is significant as battery is a misdemeanor while battery on an emergency care provider is a felony. Thus, it is plain from the face of the record that counsel's failure to seek a JOA on the battery on an emergency care provider charge was prejudicial to Appellant and constituted ineffective assistance of counsel. *See Bagnara*, 189 So. 3d at 172 (counsel's failure to properly move for JOA when state did not prove value element of grand theft constituted ineffective assistance of counsel on the face of the record); *Gordon v. State*, 126 So. 3d 292, 295–96 (Fla. 3d DCA 2011) (counsel's failure to properly move for JOA when state did not prove all of the elements of charged crime constituted ineffective assistance of counsel on the face of the record).

Under these circumstances, "[i]t would be a waste of judicial resources to postpone addressing this issue until [Appellant] seeks post-conviction relief for ineffective assistance of counsel below." *Lesovsky v. State*, 198 So. 3d 988, 992 (Fla. 4th DCA 2016). Accordingly, we reverse Appellant's conviction for battery on an emergency medical care provider.

    ii)    <u>Failure to Request a Self-Defense Instruction</u>

6

Appellant also argues that his counsel was ineffective for failing to request a self-defense jury instruction which, according to Appellant, would have been based on a theory that Appellant was protecting himself from being illegally detained under Florida's Baker Act. Appellant is correct that self-defense is a viable defense to the crimes of battery and battery on an emergency medical care provider. *See Spurgeon*, 114 So. 3d at 1047. Further, even though Appellant also asserted insanity as a defense, Appellant was entitled to assert self-defense as an alternate theory of defense regardless of whether the defenses may have been inconsistent. *See Martin v. State*, 110 So. 3d 936, 939 (Fla. 1st DCA 2013) (defendant was entitled to have jury instructed on self-defense in aggravated assault on a law enforcement officer case even though defendant also asserted that he was insane). Thus, had Appellant's counsel requested a self-defense instruction, it certainly would have been error for the court to deny the request. *Spurgeon*, 114 So. 3d at 1047.

However, this does not mean that counsel was necessarily ineffective on the face of the record for failing to make such a request. "[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000).

Here, Appellant's counsel primarily argued that Appellant was not guilty by way of insanity because Appellant did not know what he was doing or that what he was doing was wrong due to his mental condition. Arguing self-defense as proffered would have required Appellant's counsel to assert that, in the alternative, Appellant knew what he was doing but reasonably believed he needed to act to protect himself from being unlawfully detained. It is entirely possible and reasonable that counsel made a strategic decision not to pursue an alternate defense of self-defense in order not to undermine the credibility of the proffered insanity defense. *Compare Cole v. State*, 221 So. 3d 534, 543–44 (Fla. 2017) (counsel's decision to abandon duress defense and instead argue that the defendant did not knowingly participate in the crime was strategic and reasonable), *with Kruse v. State*, 222 So. 3d 13, 17 (Fla. 4th DCA 2017) (counsel was ineffective on the face of the record for failing to request a self-defense instruction when the evidence supported the instruction and there could be no strategic basis for not asking for the instruction as self-defense was the defendant's only proffered defense). Under the facts of this case, this issue of whether counsel was deficient for failing to request a self-defense instruction requires explanation from counsel and is, therefore, better suited for postconviction proceedings.

**Conclusion**

In conclusion, we hold that the State did not and could not prove the nurse victim was an "emergency medical care provider" and, therefore, did not prove that Appellant committed the offense of battery on an emergency medical care provider. Although Appellant's trial counsel did not preserve this error for appeal by moving for a JOA and the error is not fundamental, counsel's failure to move for a JOA constitutes ineffective assistance of counsel on the face of the record. Counsel was not, however, ineffective on the face of the record for failing to request a self-defense instruction when counsel also proffered a potentially inconsistent insanity defense. Based on the foregoing, we reverse Appellant's conviction and sentence for battery on an emergency medical care provider and, on remand, direct the trial court to enter a judgment of guilt for the lesser-included offense of battery and proceed with a resentencing on that count. We otherwise affirm without prejudice for Appellant to file a motion for postconviction relief on the self-defense issue.

*Affirmed in part, reversed in part and remanded.*

LEVINE, J., concurs.
KUNTZ, J., concurs specially with opinion.

KUNTZ, J., concurring specially.

As Judge Winokur explains in his concurring opinion in *Latson v. State*, 193 So. 3d 1070, 1071-75 (Fla. 1st DCA 2016), direct appellate review of a criminal judgment should be limited to preserved arguments and fundamental error. Section 924.051(2), Florida Statutes (2017), states that "[t]he right to direct appeal . . . may only be implemented in strict accordance with the terms and conditions of this section," and section 924.051(3) limits review on direct appeal to "prejudicial error" that "is properly preserved or, if not properly preserved, would constitute fundamental error." So "[i]t seems clear that fundamental error is the 'sole exception' to the general rule that a party must preserve errors to raise them on appeal." *Latson*, 193 So. 3d at 1072 (Winokur, J., concurring). Despite this statutory limit on our authority, a Florida Supreme Court decision compels reversal. Thus, I fully concur in the Court's opinion.

In this case, the State failed to prove each element of the crime for which the Defendant was convicted. At the close of the State's case, the circuit court asked defense counsel whether he intended to assert any

motions. In response, defense counsel represented that the Defendant was not seeking a judgment of acquittal.

Similarly, in *Monroe v. State*, 191 So. 3d 395, 398 (Fla. 2016), "[a]fter the State rested, the trial court asked defense counsel if they intended to move for judgment of acquittal. Defense counsel declined." The defendant argued on appeal that the state failed to introduce evidence to establish an element of the crime. *Id.* at 399-400. Conceding the issue was not preserved, the defendant argued it was fundamental error to convict him when the State failed to prove each element of the crime. *Id.*

Our supreme court reaffirmed its prior decisions, holding that unpreserved challenges to the sufficiency of the evidence cannot be reviewed on direct appeal when there is sufficient evidence to establish the defendant committed a crime. *Id.* at 401-02. Such unpreserved claims are only cognizable as fundamental error on direct appeal when the State fails to prove the defendant committed any crime at all. *Id.*

But the lack of preservation or fundamental error did not result in an affirmance. *Id.* The court continued and held "that the failure of Monroe's trial counsel to preserve the sufficiency of the evidence issue for appellate review constitutes ineffective assistance of counsel that is apparent from the face of this record." *Id.* at 402. Based upon the finding of ineffective assistance of counsel on the face of the record, the court reversed. *Id.* at 404.

The question presented in this case is nearly identical to that answered in *Monroe*. In both cases, the State failed to prove each element of the crime, but the defendant did not preserve the issue by moving for a judgment of acquittal. Further, in both, the State presented sufficient evidence to establish a lesser included offense thereby precluding fundamental error.

Based on *Monroe*, I agree that we must reverse the Defendant's conviction for ineffective assistance of counsel on the face of the record. The circumstances are too similar. But absent the controlling opinion from the supreme court, I would question our authority to do so. The legislature limited direct appeal of a criminal judgment to preserved issues and fundamental error. Notwithstanding the statutory limits, claims of ineffective assistance of counsel on direct appeal are now commonly asserted. As Judge Winokur concluded, "the practice of permitting claims of ineffective assistance of counsel on direct appeal stemmed from a misreading of case law, and is directly contrary to controlling statutory law." *Latson*, 193 So. 3d at 1074. Allowing a defendant to assert claims

of ineffective assistance of counsel on direct appeal, absent fundamental error, allows the defendant to evade the strict requirements for fundamental error and "deprives trial counsel of the opportunity to defend themselves against allegations of unprofessional conduct." *Id.* In the future, we should be careful to limit our review to that authorized by statute or, as here, mandated by supreme court precedent.

* * *

**FINAL UPON RELEASE; NO MOTION FOR REHEARING WILL BE ENTERTAINED; MANDATE ISSUED SIMULTANEOUSLY WITH OPINION.**